UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GAGE O'NEAL WORKMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-288 |
| | ) |
| DETECTIVE JEFFERY MARSEE, | ) |
| OFFICER ROESLER, | ) |
| JOHN DOE OFFICERS, and | ) |
| THE CITY OF FORT WAYNE, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
MOTION FOR SUMMARY JUDGMENT**

**I.
INTRODUCTION**

This lawsuit arises out of the arrest of Gage O'Neal Workman for Attempted Murder and Aggravated Battery. On November 7, 2021, Jordan Chin was shot multiple times while driving her car. Ms. Chin reported to the police that Gage Workman pulled up along the right side of her vehicle in a silver Ford and started shooting at her. The gunshots hit Ms. Chin.

Detective Jeffery Marsee interviewed Gage Workman. Mr. Workman told Detective Marsee that on November 7, 2021, he got into an argument with Jordan Chin and he took a gun away from her. A voice stress test administered to Mr. Workman regarding the shooting of Ms. Chin showed that Mr. Workman did not respond truthfully. On December 1, 2021, Mr. Workman was arrested.

In the First Amended Complaint, Mr. Workman is claiming false arrest and unlawful detainment under the Fourth Amendment. Mr. Workman also asserts a state law claim for

malicious prosecution. However, based on the undisputed material facts, the defendants are entitled to summary judgment on all claims asserted by Mr. Workman. These undisputed facts are set forth in the Defendants Statement of Undisputed Material Facts, Document 25.

## II.
## ARGUMENT

**A.**     **Legal standard for summary judgment.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has established that there is no material issue of fact, the non-moving party must produce evidence that would support a jury verdict. *Valentine v. Joliet TP. High School Dist. No. 204*, 802 F.2d 981 (7th Cir. 1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**B.**     **The defendant officers did not unlawfully arrest or unlawfully detain Gage Workman.**

In the First Amended Complaint, Mr. Workman alleges that Detective Jeffery Marsee, Officer Roesler, and John Doe Officers unlawfully arrested and unlawfully detained Mr. Workman under the Fourth Amendment (First Amended Complaint, paras. 19, 27, Doc. 4). However, Mr. Workman's claims fail as a matter of law.[1]

As a Detective with the Fort Wayne Police Department, Detective Marsee investigated the attempted murder of Jordan Young Chin, which occurred on November 7, 2021. (Marsee

---

[1] The claims against "Officer Roesler" and "John Doe Officers" should be dismissed as set forth in Section C below.

2

Aff., Ex. "A", para. 2). Detective Marsee's investigation included interviewing Gage Workman, reviewing the interview of Jordan Chin, interviewing witnesses, reviewing officers' narrative reports, reviewing photographs, inspecting the area where the shooting occurred, and reviewing other evidence gathered during the investigation. (*Id*., para. 3).

Detective Marsee's investigation indicated that on November 7, 2021, at approximately 11:48 p.m., officers of the Fort Wayne Police Department heard gunshots in the area of State Boulevard and Beacon Street in Fort Wayne. (*Id*., para. 4). The shooting was heard by police officers patrolling the area as well as by police officers who were at the Fort Wayne Police Department's Northeast outpost located at the intersection of State Boulevard and Beacon Street. (*Id*., para. 4).

On November 7, 2021, at 11:51 p.m., an employee of Parkview Hospital Randallia called the City of Fort Wayne communications in regards to a shooting victim who had just arrived at the hospital. (*Id*., para. 5). The area where the gunshots were heard by police officers is very close to Parkview Hospital Randallia. (*Id*., para. 5).

The shooting victim, identified as Jordan Young Chin, had driven to the emergency room area of Parkview Hospital in her 2017 Black Chevy Malibu. (*Id*., para. 6). Ms. Chin was suffering from multiple gunshot wounds. (*Id*., para. 6).

Medics outside of Parkview Hospital saw Ms. Chin drive into the parking lot. (*Id*., para. 7). When Ms. Chin opened her car door, the medics came to her aid. (*Id*., para. 7).

The medics took Ms. Chin into Parkview Hospital. (*Id*., para. 8). Because Ms. Chin's condition was life threatening, Ms. Chin was transferred to Parkview Regional Medical Center on Dupont Road where she underwent numerous surgeries. (*Id*., para. 8).

On November 19, 2021, Detective Marsee interviewed Gage Workman at the Fort Wayne Police Department in regards to the attempted murder of Jordan Chin. (*Id*., para. 9). Mr. Workman stated that on November 7, 2021, he and Jordan Chin were at an apartment at Blackhawk Apartments and he was mad that his phone charger was lost. (*Id*., para. 9). Mr. Workman also stated that he took a gun from Ms. Chin while at the apartment. (*Id*., para. 9).

A voice stress test was administered to Gage Workman during the interview on November 19, 2021, regarding the shooting of Jordan Chin. (*Id*., para. 10). A voice stress test is designed to measure changes in voice patterns caused by the stress, or the physical effort, of trying to hide deceptive responses. (*Id*., para. 10). Mr. Workman's voice stress test showed that Mr. Workman did not respond truthfully to the relevant questions. (*Id*., para. 10).

On November 30, 2021, Detective Matthew Cline of the Fort Wayne Police Department interviewed Ms. Chin at Parkview Regional Medical Center. (*Id*., para. 11). Because of Ms. Chin's injuries from the shooting, this was the first time that Ms. Chin was able to talk to detectives. (*Id*., para. 11).

During the interview with Detective Cline, Ms. Chin stated that on November 7, 2021, she was at Blackhawk Apartments at her friend Richard Klaff Jr.'s apartment. (*Id*., para. 12). Gage Workman was there. (*Id*., para. 12). Mr. Workman was mad about a cube for his cell phone that he could not find. (*Id*., para. 12).

Ms. Chin stated that she left the apartment and was driving westbound on State Boulevard. (*Id*., para. 13). Ms. Chin stated that at approximately State Boulevard and Coliseum Boulevard she noticed that a silver Ford was following her. (*Id*., para. 13).

Ms. Chin stated that when she got to the CVS near State Boulevard and Beacon Street, the silver Ford pulled up along the right side of her vehicle. (*Id*., para. 14). Ms. Chin stated that

she saw Gage Workman in the driver's seat. (*Id*., para. 15). Ms. Chin did not see anyone else in the silver Ford. (*Id*., para. 15). Ms. Chin stated that Gage Workman pulled up a handgun and started shooting at her. (*Id*., para. 16). Ms. Chin stated that she knew it was Gage Workman as they were friends and she had stayed the night at his house from time to time. (*Id*., para. 17).

The gunshots hit Ms. Chin. (*Id*., para. 18). She immediately drove to Parkview Hospital Randallia, which is a few blocks from where she was shot. (*Id*., para. 18).

Ms. Chin's cell phone records confirm what Ms. Chin told Detective Cline. (*Id*., para. 19). Ms. Chin's cell phone records show that she was at Blackhawk Apartments until approximately 11:40 p.m. and then at 11:44 p.m., her cell phone records show that she was at State Boulevard and Coliseum Boulevard. (*Id*., para. 19). The next location of Ms. Chin's cell phone was in the area of the shooting, State Boulevard and Beacon Street, and then at Parkview Hospital Randallia. (*Id*., para. 20). Security video from a business in the area of East State Boulevard and Beacon Street shows Ms. Chin's vehicle and a silver car approaching the intersection. (*Id*., para. 21).

Detective Marsee interviewed Gage Workman again on November 19, 2021. (*Id*., para. 22). During the interview, Mr. Workman stated that on November 7, 2021, he was mad while at the apartment at Blackhawk Apartments because he could not find his cube for his cell phone. (*Id*., para. 23). Mr. Workman stated that he got into an argument with Jordan Chin and she tried to leave the apartment with a handgun. (*Id*., para. 23).

Mr. Workman stated that he stopped Ms. Chin and took the gun away from her. (*Id*., para. 24). Mr. Workman stated that once he got the gun away from Ms. Chin, she was pushed out of the apartment and the apartment door was closed. (*Id*., para. 25). Mr. Workman stated that this was around 11:00 p.m. (*Id*., para. 25).

Mr. Workman stated that he did not know where Ms. Chin went. (*Id*., para. 26). Mr. Workman stated that when he left the apartment approximately ten to fifteen minutes later, Ms. Chin's car was not at the apartment. (*Id*., para. 26).

On December 1, 2021, Gage Workman was arrested and charged with Attempted Murder and Aggravated Battery with a deadly weapon. (*Id*., para. 27). Gage Workman was the only person in the vehicle that pulled alongside Ms. Chin's car. (*Id*., para. 27). Gage Workman pulled a handgun and began shooting into Ms. Chin's vehicle, hitting her four times and causing life threatening injuries. (*Id*., para. 27).

Detective Marsee prepared an Affidavit for Probable Cause for Attempted Murder and Aggravated Battery. (*Id*., para. 28). The Affidavit for Probable Cause was signed by a deputy prosecutor. (*Id*., para. 28). An Allen County Superior Court Judge found probable cause and signed the Affidavit for Probable Cause on December 6, 2021. (*Id*., para. 28). Attached to Detective Marsee's Affidavit as Exhibit "A-1" is a true and correct copy of the Affidavit for Probable Cause. (*Id*., para. 28).

"Probable cause is an absolute defense to any claim under [42 U.S.C.] § 1983 for wrongful arrest or false imprisonment." *Gault v. Galligan*, 2023 WL 3947618 (N.D. Ind. 2023). Probable cause is an absolute bar to a Section 1983 claim for false arrest. *Montano v. City of Chicago*, 535 F.3d 558, 568 (7th Cir. 2008); *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007).

A police officer has probable cause to arrest if a reasonable person would believe, based on the facts and circumstances known at the time, that a crime had been committed. *Scott v. U.S.*, 98 S. Ct. 1717, 1723 (1978); *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Woods v. City of Chicago*, 234 F.3d 979, 995-96 (7th Cir. 2000). A plaintiff's Section 1983 action must be dismissed

6

without a trial if there is any reasonable basis to conclude that probable cause existed. *Thompson v. Wagner*, 319 F.3d 931, 935 (7th Cir. 2003).

"As long as a reasonably credible witness or victim informs the police that someone has committed a crime, or is committing a crime, the officers have probable cause to arrest." *Lambach v. Conte*, 2023 WL 4027535 (7th Cir. 2023).

"Once a police officer defending a claim of false arrest moves for summary judgment on the ground that his actions were supported by probable cause and submits evidence that a duly authorized judicial officer found probable cause, the defendant has necessarily put probable cause at issue, and the plaintiff must thus come forward to show that there is an issue of fact as to the existence of probable cause to survive summary judgment." *Simmons v. Pryor*, 26 F.3d 650, 653 (7th Cir. 1993).

Based on the above undisputed facts, the arrest of Mr. Workman for Attempted Murder and Aggravated Battery was supported by probable cause. Mr. Workman told Detective Marsee that on November 7, 2021, he got into an argument with Jordan Chin and took a gun from her. Mr. Workman's voice stress test showed deception. Ms. Chin reported to the police that Mr. Workman pulled up along the right side of her vehicle in a silver Ford and started shooting at her. The gunshots hit Ms. Chin. Further, a duly authorized judicial officer found probable cause. As such, Mr. Workman's false arrest claim and unlawful detention claim under the Fourth Amendment fail as a matter of law.[2]

**C.    Gage Workman's claims against "Officer Roesler" and "John Doe Officers" under 42 U.S.C. § 1983 fail.**

---

[2] Further, not only does the existence of probable cause bar Mr. Workman's unlawful detention claim, there is no evidence whatsoever that Detective Marsee detained Mr. Workman from November 27, 2021, to May 16, 2022, as alleged in the First Amended Complaint.

In his First Amended Complaint, Mr. Workman alleges that "Officer Roesler" and "John Doe Officers" violated his Fourth Amendment rights under Section 1983. In order for a plaintiff to bring a viable Section 1983 claim against an individual, the plaintiff must show that the individual was personally involved in the alleged constitutional deprivation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) ("Section 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim."); *Zentmyer v. Kendall County*, 220 F.3d 805, 811 (7th Cir. 2000) ("[L]iability under Section 1983 arises only when the plaintiff can show that the defendant was 'personally responsible for a deprivation of a constitutional right.'"). "Claims against unknown persons are 'meaningless and uncompensable.'" *Copeland v. Northwestern Memorial Hospital*, 964 F. Supp. 1225, 1234 (N.D. Ill. 1997).

Mr. Workman's claims against "Officer Roesler" fail. Sergeant Howard Johnson states in his Affidavit, "I have reviewed the Fair Labor Standards Act ("FLSA") computer program, which is a computer program that the Fort Wayne Police Department uses to monitor and maintain Fort Wayne police officer personnel information. On November 7, 2021, and December 1, 2021, the Fort Wayne Police Department did not and currently does not employ a police officer named 'Officer Roesler'". (Johnson Aff., Ex. D, para. 3). As there is no "Officer Roesler", there can be no claims against "Officer Roesler".

Mr. Workman has failed to show that an "Officer Roesler" or that "John Doe Officers" had any contact with Mr. Workman or that they were personally responsible for the alleged deprivation of Mr. Workman's constitutional rights. Mr. Workman also has failed to identify the "John Doe Officers" that allegedly were personally responsible for the alleged deprivation of Mr.

Workman's constitutional rights. As such, summary judgment should be granted on all of Mr. Workman's Fourth Amendment claims against "Officer Roesler" and "John Doe Officers".

Further, the deadline for Mr. Workman to seek leave of court to amend the pleadings was February 3, 2023. (Doc. 11). Thus, Mr. Workman can no longer name the "John Doe Officers". As such, Mr. Workman's claims against the "John Doe Officers" should be dismissed.

**D.    Detective Jeffery Marsee is entitled to qualified immunity.**

The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Marshall v. Allen*, 984 F.2d 787, 791 (7th Cir. 1993), *reh'g denied*. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Seventh Circuit emphasizes that even though pertinent facts are disputed, the judge *always* decides the qualified immunity issue. *Martin v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988).

The United States Supreme Court holds that if no constitutional right was violated, there is no necessity for further inquiries. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, if a violation could be made, the next step is to ask whether the right was clearly established; this inquiry must be undertaken in light of the particular circumstances of the case. *Id*. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation the officer confronted. *Id*. If the law did not place the officer on notice that the conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. *Id*. at 201-02. The law of

9

qualified immunity provides that if officers of reasonable competence could disagree on an issue, immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335 (1986).

In *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015), the United States Supreme Court stated:

> "We have repeatedly told courts . . . not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." (citations omitted).

Likewise in *White v. Pauly*, 137 S. Ct. 548, 552 (2017), the United States Supreme Court stated:

> "Today, it is again necessary to reiterate the long standing principle that 'clearly established law' should not be defined 'at a high level of generality'. As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." (citations omitted).

In the present case, Detective Marsee did not violate Mr. Workman's Fourth Amendment constitutional rights. There was probable cause to arrest Mr. Workman. Detective Marsee did not violate clearly established law. As such, Detective Marsee is entitled to qualified immunity.

**E.** **State Law Claim for Malicious Prosecution.**

    **1.** **Gage Workman failed to comply with the notice provisions of the Indiana Tort Claims Act, barring all state law claims against the defendants.**

Mr. Workman's First Amended Complaint alleges in Count III "Malicious Prosecution Pursuant to Indiana State Law". (Doc. 4, p. 6). Since this is a state law claim, Mr. Workman was required to comply with the notice provisions of the Indiana Tort Claims Act ("ITCA"). Mr. Workman failed to do so. Therefore, Mr. Workman's state law malicious prosecution claim is barred.

Indiana Code 34-13-3-8 provides that a claim against a political subdivision is barred unless notice is filed with (1) the governing body of that political subdivision and (2) the Indiana Political Subdivision Risk Management Commission within one hundred eighty days after the loss occurs. The notice must describe in a short and plain statement the facts on which the claim is based, including the circumstances which brought about the loss, the extent of the loss, the time and place that the loss occurred, the names of the persons involved, if known, the amount of damages sought, and the residence of the person making the claim both at the time of the loss and at the time the notice is filed. I.C. 34-13-3-10. The purpose of the notice is to provide the government entity the opportunity to investigate the facts surrounding the incident so that it may determine its liability and prepare a defense. *Hasty v. Floyd Memorial Hospital*, 612 N.E.2d 119, 123 (Ind. Ct. App. 1993). In addition, "a person may not initiate a suit against a governmental entity unless the person's claim has been denied in whole or in part." I.C. 34-13-3-13. The ITCA applies to suits against employees of political subdivisions as well as to the subdivisions themselves. *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999).

The Indiana Tort Claims Act bars suits when timely notice has not been given. *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000). *See also Holtz v. Board of Commissioners of Elkhart County*, 560 N.E.2d 645, 648 (Ind. 1990) (summary judgment granted when notice of tort claim is not filed within 180 days); *Brunton v. Porter Memorial Hospital Ambulance Service*, 647 N.E.2d 636, 639 (Ind. Ct. App. 1994) (claim against a political subdivision is barred unless notice is filed with governing body of the political subdivision within 180 days after loss occurs).

"Compliance with the notice provisions of the ITCA is a procedural precedent which the plaintiff must provide and which the trial court must determine before trial." *Alexander v. City*

*of South Bend*, 256 F. Supp. 2d 865, 875 (N.D. Ind. 2003) (quoting *VanValkenburg v. Warner*, 602 N.E.2d 1046, 1048 (Ind. Ct. App. 1992)). Once the defense of failure to file a Notice of Tort Claim is raised by the defendant, the burden is upon the plaintiff to provide compliance with the notice provisions of the ITCA. *Id.*; *Hedges v. Rawley*, 419 N.E.2d 224, 227 (Ind. Ct. App. 1981). Although the requirements of the ITCA are not applicable to Section 1983 claims, those requirements apply to pendent state law claims made within the Section 1983 suit. *Meury v. Eagle-Union Community School Corp.*, 714 N.E.2d 233, 242 (Ind. Ct. App. 1999).

Compliance with the notice provisions of the ITCA is a question of law for the Court; not a question of fact for the jury. *Indiana State Highway Commission v. Morris*, 528 N.E.2d 468, 471 (Ind. 1988). Summary judgment in favor of the governmental entity and/or the employee of a governmental entity is appropriate when the plaintiff fails to comply with the mandatory requirements of the notice provisions. *Coghill v. Badger*, 418 N.E.2d 1201 (Ind. Ct. App. 1981).

The City of Fort Wayne has not received a Notice of Tort Claim in 2021 or 2022 from or regarding a Gage O'Neal Workman. *See* the Affidavit of Lana Keesling, Exhibit E. The failure to comply with the mandatory notice provisions of the ITCA precludes Mr. Workman's state law malicious prosecution claim. *Dameron v. City of Scottsburg*, 36 F. Supp. 2d 821, 836-39 (S.D. Ind. 1998) (granting summary judgment in part where plaintiff's state law claim was barred for failure to file proper notice under the ITCA); *LCEOC, Inc. v. Greer*, 735 N.E.2d 206, 210 (Ind. 2000) (affirming summary judgment where tort claim notice was absent for a state law claim against a governmental entity). As a result, the defendants are entitled to summary judgment as a matter of law with respect to the state law claim of malicious prosecution raised in Mr. Workman's First Amended Complaint.

    **2.**    **Detective Jeffery Marsee was acting within the scope of his employment and is entitled to immunity under the Indiana Tort Claims Act.**

Even if Mr. Workman had complied with the notice provisions of the Indiana Tort Claims Act, Detective Marsee is entitled to immunity under the Indiana Tort Claims Act. The Indiana Tort Claims Act states, in relevant part:

> "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following:
> . . . .
> (8) The adoption and enforcement of or failure to adopt or enforce: (A) a law (including rules and regulations); . . . unless the act of enforcement constitutes false arrest or false imprisonment." I.C. 34-13-3-3.

There is a two-step process for determining whether Indiana Code 34-13-3-3(8) provides immunity. First, it must be determined whether the employee officer was acting within the scope of his or her employment when the injury to a plaintiff occurred. *Harness v. Schmitt*, 924 N.E.2d 162, 165 (Ind. Ct. App. 2010). Second, it must be determined whether the officer was engaged in the enforcement of a law at that time. *Id.* "While the issue of a governmental entity's immunity from liability under the ITCA may require extended factual development, the issue remains a question of law for the courts." *E. Chicago Police Dep't v. Bynum*, 826 N.E.2d 22, 26 (Ind. Ct. App. 2005).

Detective Marsee was acting within the scope of his employment and was engaged in the enforcement of law. As such, Detective Marsee is entitled to immunity for Gage Workman's state law malicious prosecution claim under Indiana Code 34-13-3-3.

### **3. Gage Workman's state law malicious prosecution claim fails as a matter of law.**

Even if Mr. Workman had complied with the notice provisions of the Indiana Tort Claims Act, his malicious prosecution claim still fails. In a malicious prosecution action, the plaintiff has the burden of proving: 1) the defendant instituted, or caused to be instituted, a prosecution against the plaintiff; 2) the defendant acted maliciously in doing so; 3) the

13

prosecution was instituted without probable cause; and 4) the prosecution terminated in the plaintiff's favor. *Wong v. Tabor,* 422 N.E.2d 1279, 1283 (Ind. Ct. App. 1981).

Mr. Workman cannot set forth any facts to establish any of the four elements of a malicious prosecution claim. As such, the malicious prosecution claim should be dismissed as a matter of law.

### 4. The City of Fort Wayne is not liable under a theory of *respondeat superior.*

*Respondeat superior* is a theory of vicarious liability whereby an employer can be held liable for the state law torts of an employee if committed in the scope of his employment. *Branham v. Celadon Trucking Serv., Inc.*, 744 N.E.2d 514, 525 n. 2 (Ind. Ct. App. 2001). As a result, if the employee is not liable, the employer cannot be liable either. *Id.* Since the state law claim against the defendants fails, the state law claim also fails against the City of Fort Wayne.

### F.     Gage Workman has no claim for punitive damages.

Punitive damages may only be assessed "when the defendant's conduct is shown to be motivated by evil intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Merritt v. De Los Santos*, 721 F.2d. 598, 601 (7th Cir. 1983) (*citing Smith v. Wade*, 461 U.S. 30 (1983)). In this case, there is no evidence that the defendants' actions were motivated by evil motive or intent, or that their actions involved reckless or callous indifference to the federally protected rights of Mr. Workman. Therefore, summary judgment should be granted on the punitive damages claim asserted against the defendants.

## III.
## CONCLUSION

For all the foregoing reasons, the defendants respectfully request that this Court grant summary judgment on all claims asserted against them.

        Respectfully submitted,

        **TRIER LAW OFFICE, LLC**

        /s/Carolyn M. Trier
        Carolyn M. Trier, Esq. #15581-02
        P.O. Box 5528
        Fort Wayne, IN  46895
        Telephone: (260) 485-7000
        Fax: (260) 485-7003
        E-mail: carolyntrier@trierlaw.com
        ATTORNEY FOR DEFENDANTS

### CERTIFICATE OF SERVICE

  I hereby certify that on the 5th day of July 2023, a true and correct copy of the foregoing document was served to all counsel of record herein by CM/ECF electronic case filing system as follows:

  Cierra N. Norris, Cierra@cnnorrislaw.com
  C. Norris Law Group, LLC
  900 West Jackson Boulevard, Suite 7E
  Chicago, IL 60607

        /s/Carolyn M. Trier
        Carolyn M. Trier